**Christopher Lundberg** OSB No. 941084
email: clundberg@hk-law.com
**Matthew E. Malmsheimer,** OSB No. 03384
Email: mmalmsheimer@hk-law.com
**HAGLUND KELLEY LLP**
200 S.W. Market Street, Suite 1777
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Eugene Division)

| | |
|---|---|
| **KEN BORDER**, an individual, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | Violation of 42 U.S.C. § 1983 - Fourteenth Amendment Right to Due Process; Violations of ORS 659A.203 – Public Whistleblower Retaliation; Common Law Negligence |
| **LANE COUNTY**, a municipal governmental entity, **DONOVAN DUMIRE**, an individual, **AARON RAUSCHERT**, an individual; and **GREGORY OLSON**, an individual, and **GTO MANAGEMENT, INC.  dba USO CONSULTING,** an Oregon corporation | Jury Trial Demanded |
| Defendants. | |

## **INTRODUCTION**

Plaintiff Kenneth Border is a long-term and well respected Parole and Probation Officer ("PPO"), who until recently worked for the Lane County Parole and Probation Department.  For years, Mr. Border had been the sole officer assigned to the Department's Gang Unit, which oversaw one of the County's most demanding offender populations.  Officer Border repeatedly

Page 1 – **COMPLAINT**

reported on the negative consequences of this short-staffing and pushed for additional staffing in the Gang Unit, believing that it presented a significant public safety risk and limited his ability to satisfactorily oversee that population.

However, while his reports did not result in additional staffing, Officer Border's frequent communications of his concern caused his supervisor, Aaron Rauschert, to become irritated with him. Mr. Rauschert's irritation intensified into outright hostility after Officer Border reported to Department Manager Donovan Dumire his concern that Mr. Rauschert had inappropriately ordered Mr. Border to approve the transfer of a gang member to another county. Mr. Border reasonably believed that this transfer posed a safety risk to the community. Mr. Dumire agreed with Officer Border and overruled Mr. Rauschert's decision. Afterwards, Mr. Rauschert avoided interactions with Officer Border, expressed hostility toward him and treated him less favorably than other PPOs.

Eventually, Mr. Rauschert took his revenge by opportunistically seizing on a low-level incident involving Officer Border's off-duty weapon and ordering a major investigation that ultimately resulted in Officer Border's firing. This incident arose from Officer Border's act of bringing in from his car and securely storing in his office his off-duty weapon during his workday. Under applicable rules, Officer Border needed to be "qualified" on that weapon before he could bring it onto County property, even if he did not use it as a back-up weapon during the day but rather simply secured it in the office until his work day was over.

Rather than conduct an internal investigation into this straightforward situation, the County hired an outside investigator to conduct the investigation. That outside investigator was defendant USO Consulting. During the first interview, Mr. Border admitted to violating the rule

Page 2 – **COMPLAINT**

requiring his certification.  However, rather than end the investigation at that point, and with the

urging of Mr. Rauschert and *without* notice to Officer Border, the investigator Gregory Olson

undertook an additional investigation into Officer Border's truthfulness as to his recollection of

the underlying circumstances, which had occurred months earlier.  Ultimately, Mr. Olson

wrongfully concluded that Officer Border had been untruthful about those circumstances.  Mr.

Olson's finding of untruthfulness caused the County to fire Officer Border.

      Officer Border challenged his firing and, with his union's assistance, requested a hearing.

After a hearing during which witnesses testified and documents were introduced, an arbitrator

ruled that the investigation had failed to establish that Officer Border had been untruthful and

ordered the reinstatement of Officer Border to his previous position with an award of back pay.

While that reinstatement corrected the lost wages caused by Mr. Rauschert's retaliation and Mr.

Olson's negligence, it did not compensate him for his economic losses necessitated by his search

for replacement income pending the conclusion of the arbitration, nor did it remedy the damage

to Officer Border's reputation and the accompanying stress, humiliation, and emotional distress.

This civil action seeks to correct those injuries, which are currently estimated to be valued at

$309,200.

## JURISDICTION

1.      This Court has original jurisdiction over Plaintiff's federal statutory claims under

28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's pendant state claims

under 28 U.S.C. § 1367.

/// /// ///

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

**VENUE**

2.        Venue is proper in the District of Oregon, Eugene Division, because all of the

Defendants reside within the State of Oregon and all of the events giving rise to the claims

occurred in Lane County in the State of Oregon.  28 U.S.C. § l391(b).

**PARTIES**

3.        Plaintiff Kenneth Border is an individual and a resident of Multnomah County,

Oregon.

4.        Defendant Lane County is a governmental subdivision of the State of

Oregon.  At all times material, it acted by and through its employees and/or agents who were

acting within the course and scope of their employment and in furtherance of county's interests.

5.        Defendant Donovan Dumire is an individual and, upon information and belief,

a resident of Eugene, Oregon.  At all times material, Mr. Dumire served as a Manager with the

Lane County Parole and Probation Department and thus his actions towards Officer Border were

taken under color of state law.

6.        Defendant Aaron Rauschert is an individual and, upon information and belief,

a resident of Eugene, Oregon.  At all times material, Mr. Rauschert served as a Supervisor with

the Lane County Parole and Probation Department and thus his actions towards Officer Border

were taken under color of state law.

7.        Defendant Gregory Olson is an individual and, upon information and belief,

resident of Oregon.  At all times material, Mr. Olson served as a contract investigator on behalf

of the Lane County Parole and Probation Department and thus his actions towards Officer

Border were taken under color of state law.

Page 4 – **COMPLAINT**

8.      Defendant GTO Management, Inc., *dba* USO Consulting, is an Oregon corporation.  It is operated by Gregory Olson, who performs investigative work for the corporation.

## FACTS

9.      Kenneth Border ("Officer Border") was hired as a Parole and Probation Officer ("PPO") for the Lane County Parole and Probation Department (the "PPD" or "Department") on September 15, 2004.  Officer Border was assigned to the Department's Gang Unit, which oversees the parole and probation of gang affiliated offenders.

10.      Officer Border was a competent and dedicated Parole and Probation Officer.  He was widely respected by his fellow officers and superiors and had a solid reputation for honesty, hard work, and integrity.  Until the events that are the basis for this action, Officer Border had never been disciplined by the Department.

11.      Officer Border's work was acknowledged by Department Manager Donovan Dumire as "very good."  Mr. Dumire acknowledged that Officer Border was assigned to one of the Department's "highest risk caseloads," and that he did a "great job in that capacity."  Mr. Dumire also recognized that Officer Border, as a Field Training Officer, was "the example of" what the Department wanted in new recruits.

12.      Consistent with his dedication to the safety of the citizens of Lane County, Officer Border reported a number of public safety issues to his superiors, including Mr. Dumire and his Supervisor Aaron Rauschert, and his union representatives.

13.      In May 2014, Officer Border reported another public safety issue within the Department.  This report specifically involved Mr. Rauschert and his decision to order the

Page 5 – **COMPLAINT**

transfer of an offender from the Lane County PPD to Washington County's PPD over Officer

Border's objection. Officer Border was concerned about the transfer because the offender had

recently been involved in a gang-related altercation in Washington County that he needed to

investigate as a parole violation before the transfer occurred. Officer Border was particularly

concerned about transferring the offender because there would be a 30-day waiting period where

the offender would be effectively unsupervised. Given the offender's gang affiliation, the recent

altercation, and the offender's weapons conviction, Officer Border was concerned that the

transfer before his completion of the investigation would jeopardize public safety.

14.     Officer Border raised all of these concerns with Mr. Rauschert. Nonetheless, Mr.

Rauschert refused to delay the transfer and directed Officer Border to complete the transfer to

Washington County.

15.     Officer Border reluctantly complied out of concern for being charged with

insubordination if he failed to follow Mr. Rauschert's direct order. However, Officer Border

informed Mr. Rauschert that he was taking his concerns about the transfer to Mr. Dumire. Mr.

Rauschert became visibly angry with Officer Border and warned him that if Officer Border went

to Mr. Dumire, then Mr. Rauschert would make a negative report about Officer Border.

16.     Officer Border reported his concerns to Mr. Dumire notwithstanding Mr.

Rauschert's threat. Mr. Dumire agreed with Officer Border's assessment of the threat to public

safety and overruled Mr. Rauschert's decision by denying the transfer.

17.     After this incident, Mr. Rauschert became openly hostile towards Officer Border,

denying him opportunities and benefits enjoyed by other PPOs, refusing to engage in social

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

interactions with him, and refusing to assist him in the management of his caseload despite Mr.
Dumire's express directive that he do so.

18.    On October 7, 2014, Officer Border reported for work.  He was sick that day.  A
little after 5 p.m., he told a colleague, PPO Michael Maslow, that he was going to leave work.
Officer Maslow urged Officer Border to go home due to his illness.

19.    As Officer Border was leaving for the day, Officer Border retrieved his off-duty
gun and went to a restroom in the facility.  While in a toilet stall, he placed his off-duty handgun
in a gun locker that was kept in the restroom facilities.  The lock and key were not used.  Officer
Border mistakenly left the restroom without his firearm.  Another PPO recovered the gun in the
restroom and gave it to Mr. Rauschert at about 5:25 P.M. that day.

20.    The firearm that Officer Border left in the restroom was not his service firearm,
but rather was a personal, off-duty firearm that Officer Border carried to and from work for his
protection.  While at work, he would store the gun in a secure compartment and retrieve it at the
end of the day.

21.    As Officer Border was leaving after using the restroom, he realized that he had to
issue an arrest warrant for an offender who had absconded.  Out of concern for a citizen's safety,
he returned to his desk and completed the warrant paperwork.  He then left for the day.  When he
got to his vehicle, Officer Border realized that he did not have his personal firearm.

22.    At approximately 6:11 p.m., Officer Border called Supervisor Shawn Hoban to
determine if anyone had found his handgun.  Mr. Hoban told Officer Border that Mr. Rauschert
had the firearm in his office.

23.    Officer Border had never used his off-duty gun as a back-up weapon during work.

Page 7 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

24.    Officer Border's inadvertent act of leaving his gun in the restroom did not pose any imminent danger or threat.

25.    Other PPO's also brought their off-duty weapons onto County premises.

26.    The next day, on October 8, 2015, Officer Border went to Mr. Rauschert's office, who returned the firearm to Officer Border.  Mr. Rauschert made no mention of any Departmental violations and he did not raise any concern with Officer Border about leaving his firearm in the restroom gun locker.

27.    On October 13, 2014, Mr. Rauschert asked Officer Border whether he was using the gun that had been found in the restroom as a duty backup weapon.  Officer Border responded that he was just carrying it to and from work and that: "It is not, yet, a backup."

28.    Subsequently, Mr. Rauschert determined that Officer Border's gun was not properly certified.

29.    Approximately one and a half years before the investigation of Officer Border, another PPO with the Department had a similar incident in which he left a firearm in the restroom gun locker.  In that instance, the firearm was found and returned to the Department by an inmate who was cleaning up the Department offices as part of his work conditions.  That PPO was not subject to an investigation and the incident was treated by the Department as a training issue requiring only that the PPO receive additional coaching.

30.    Notwithstanding, Mr. Rauschert issued a complaint of a policy violation against Officer Border for having an unauthorized firearm on County property and filed a notice of violation, which caused the County to engage defendant USO Consulting to conduct an investigation of the allegations filed by Mr. Rauschert.

Page 8 – **COMPLAINT**

31.     On January 22, 2015, 107 days *after* the underlying incident, USO Consulting, by and through Gregory Olson, initiated the investigation, met with Mr. Rauschert and then interviewed several others, including Officer Border.

32.     After the commencement of the investigation, Mr. Rauschert began to engage Officer Border in a mocking way, regularly asking Officer Border how he was doing while smirking at him.  This was in stark contrast to Mr. Rauschert's months' of stony interactions and refusal to engage socially that had followed Officer Border's May 15 offender-transfer report.

33.     During the first interview with Mr. Olson, Officer Border freely admitted that he had violated a rule by taking his off-duty firearm onto County premises before he was certified with that gun.  In response to this admission, Mr. Olson ended the interview, stating "Alright. Okay, so, I guess, I think that's all I need."

34.     But Mr. Olson's investigation did not stop there.  Rather, it continued because Mr. Rauschert influenced the direction of the investigation by making suggestive and misleading statements to the investigator, such as:

    a.  That Mr. Border had said that he "intended to use the weapon found in the restroom as a backup weapon;"

    b.  That the PPOs' schedules were rigid and inflexible such that a PPO would never leave work early or work late without first receiving a formally approved schedule change; and,

    c.  That Mr. Border was undoubtedly aware of the applicable County regulations regarding carrying a non-certified firearm on County property before the incident in question.

35.     On February 19, 2015, 135 days *after* the underlying incident, and without

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

notifying him of the focus of the new investigation, Mr. Olson met with Officer Border again to discuss Mr. Border's specific recollection of very specific facts that occurred over an approximately 45 minute time period on October 7, 2014, and about Officer Border's knowledge of the rule concerning off-duty firearms on County premises.

36.    Mr. Olson interviewed Officer Border for a third time on April 2, 2015, 177 days *after* the incident in question.  During that interview, Mr. Olson for the first time informed Officer Border that the investigation had changed to include a charge of untruthfulness.

37.    Ultimately, Mr. Olson concluded that Officer Border had been untruthful about the times he started and ended work on October 7, 2014, other circumstances that occurred between 5:15 P.M. and 6:11 P.M. that day, and about whether he knew about the policy prohibiting him from carrying the firearm onto County premises before he was certified on that gun.

38.    Department Manager Donovan Dumire believed that Mr. Olson's conclusion regarding Officer Border's untruthfulness was inconsistent with what Mr. Dumire knew of Officer Border.  Mr. Dumire also believed it was possible Officer Border simply did not correctly recollect his activities on the day in question.

39.    Despite those doubts about the accuracy of the investigator's conclusion, Mr. Dumire did not undertake any independent investigation of Mr. Olson's findings.  Accordingly, Mr. Olson's untruthfulness conclusion was accepted with no independent verification.

40.    The Department terminated Officer Border on July 14, 2015, based on Mr. Olson's untruthfulness conclusion.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

41.    Officer Border and his union initiated the grievance process and asked for a

hearing to challenge Officer Border's firing.

42.    After a hearing on the merits, during which the County offered witness testimony

and documents and made written closing arguments, the arbitrator ruled that   the County had

failed to sustain the untruthfulness charges and accordingly reversed the termination decision,

ordering that Mr. Border be restored to his position and further ordering that he be paid for all

lost time that resulted from the termination.

43.    In rendering his written opinion, the arbitrator first observed the seriousness of Mr.

Olson's conclusion, as follows:

> Border was charged with lying to the employer's investigator. The charge
> that a person is a liar is very serious and irreparably damages a person's
> character.  This result is particularly true of a Parole and Probation Officer
> who is required to testify in court under oath on a regular basis.  In fact, the
> County indicated that Borders was labeled as a Brady witness by the Lane
> County States Attorney.  If the label of liar is proved it would affect
> Border's ability to obtain employment elsewhere.  In fact, Border testified
> that he was denied employment by two other Probation and Parole offices
> because of the untruthful charges by Lane County.

44.    After considering the evidence offered at hearing, the related witness testimony, and

the parties' written arguments, the arbitrator reached the following conclusion:  The employer

has failed to prove by clear and convincing evidence that Border's statements to investigator

Olson constituted a deliberate misrepresentation of fact with an intent to deceive.

45.    The arbitrator based his conclusion on the following factors:

> a.    Border had no motive or reason to deliberately misrepresent facts to
>        Olson.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

b.  Investigator Olson, while testifying, admitted Border was truthful in his voluntary admission. That should have been the end of the investigation. After that admission Border had no motive or reason during the third interview to misrepresent detailed facts of what happened between 5:15 P.M. and 6:11 P.M. six and one half months earlier. Investigator Olson testified at the arbitration hearing and when questioned he had no reasonable explanation as to why PO Border would be untruthful.

c.  Donovan Dumire, manager of the Lane County PPO office testified that he knew Border and his reputation in the workplace and he was Border's ultimate supervisor. Dumire testified that the conclusion of investigator Olson regarding Border's untruthfulness was inconsistent with what Dumire knew of Border.

d.  Dumire also testified it was possible Border simply did not correctly recollect his activities.

e.  Dumire also testified that he did not undertake any independent investigation of Olson's findings.

f.  Several Lane County PPOs who worked with Border over the years testified that they were familiar with Border in the Probation and Parole workplace environment and testified under oath that Border had a good reputation for truthfulness in that environment.

g.  PO Michael Maslow testified under oath that she worked with Border on the day in question. She testified Border had a cold on that day and said he was going to leave work at 5:30 P.M. because he was not feeling well. He did not leave work at 5:30 P.M. as he previously told her he would. She testified he did not leave because he discovered that he had to issue a warrant for an offender. It is noted that Olson never interviewed Maslow.

h.  Memories fade over time. That is particularly true of details such as the time of day when events that were not important at the time happen. It is not surprising that statements of detail required of Border at the third interview about what happened between 5:15 P.M. and 6:11P.M. six and one half months earlier were not completely accurate.

Page 12 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

    i.   Border's testimony at the arbitration was credible. I found Border's testimony as to what happened between 5:15 P.M. and 6:11 P.M. on October 7, 2014 was credible. What Border told Olson in his interviews is more likely to be a failure to accurately communicate than a deliberate attempt to deceive.

    j.   Border was not given sufficient notice that Olson was shifting the inquiry from a gun violation to include a much more serious charge of dishonesty.

    k.   The lack of notice and time to prepare made it more likely there would be discrepancies of what happened 177 days earlier between 5:15 and 6:11P.M. Had he prepared he could have pointed Olson to PO Maslow and other POs that were familiar with Borders credibility.

    l.   Border was inaccurate but the lack of warning to Border makes the employer's determination of a deliberate attempt to mislead questionable. At the end of the day Border was not in possession of all the facts when he gave his statements to investigator Olson.

46.    Officer Border returned to work in or around late March 2016, which was approximately eight months after his firing.

47.    During that period, Officer Border applied for other positions as a PPO. However, Officer Border was denied those positions as a result of Mr. Olson's untruthfulness conclusion and the County's related firing decision.

48.    During the interim of his termination and the reversal of that termination, Officer Border suffered economic damages in the form of commuting, job search, rent, and costs related to the forced sale of his home due to the interim loss of income. The amount of those economic damages will be specifically proved at trial, but are currently estimated to be $9,200.

Page 13 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

49.     In its July 14, 2015, letter notifying Officer Border of the termination decision, Lane County noted that, as a result of Mr. Olson's untruthfulness finding, the Lane County District Attorney's Office "has designated you as a Brady witness."  Lane County went on to conclude that the Brady designation "places the County at risk and presents a significant liability in your continued employment."

50.     However, the Lane County District Attorney did not issue any sort of Brady letter against Officer Border until January 7, 2016, *after* Mr. Olson's untruthfulness finding was reversed.

51.     Approximately 7 months after his rehiring, in or about July or August, 2016, a letter dated January 7, 2016, appeared in Officer Border's personnel file authored by the Lane County District Attorney that indicated it had been requested to complete a "'Brady' review" of the above investigation.  Based on that review, the District Attorney concluded that "the investigation report would have to be disclosed to the defense in any case for which P.O. Border was a witness, but it would not precluded us from calling him as a witness and allowing the court to determine if the evidence was relevant and/or admissible."

52.     Through his Union, Officer Border requested that the January 7, 2016, letter from the Lane County District Attorney be removed from his personnel file based on the reversal of the termination and dishonesty conclusion by the arbitrator.  The County has refused to do so.

53.     On or about July 8, 2016, Officer Border and Lane County entered into a Tolling Agreement that suspended the operation of the statute of limitations against Officer Border's claims.  Officer Border and Lane County entered into successive amendments of that Tolling Agreement, the final of which terminates on March 13, 2017.

Page 14 – **COMPLAINT**

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1983 - Denial of Procedural Due Process)
(Against Donovan Dumire, Aaron Rauschert, and Gregory Olson)

54.     Plaintiff Ken Border realleges the allegations set forth above, and in addition alleges the following.

55.     As set forth above, Defendants Donovan Dumire, Aaron Rauschert, and Gregory Olson were acting under color of State law in their various capacities with the Lane County Parole and Probation Department.

56.     As set forth above, Officer Border had a protected property right in his job as a PPO and in his reputation.

57.     As set forth above, Officer Border was denied those property rights when he was terminated and when a Brady letter was placed in his personnel file.

58.     As set forth above, Officer Border was not provided sufficient notice of the nature of the investigation against him at a time when it would have made a difference and he was not provided a meaningful opportunity to be heard because Defendants selectively enforced broadly worded Department policies in order to punish plaintiff for speaking out against the public safety risks created by Supervisor Rauschert and the understaffing of the Gang Unit.

59.     As Manager for the Department, Donovan Dumire ratified such conduct as final policy maker for Lane County for personnel actions.

60.     As a result of this deprivation, Officer Border has suffered significant damages in an amount to be specifically proven at trial as set forth above.

61.     Officer Border is entitled to his reasonable attorney fees.

Page 15 – **COMPLAINT**

## SECOND CLAIM FOR RELIEF
(Violation of ORS 659A.203 - Public Whistleblower Retaliation)
(Against Defendant Lane County)

62.    Plaintiff Kenneth Border realleges each and every allegation set forth above and incorporates them herein by reference.  In addition, Officer Border alleges the following facts.

63.    As set forth above, Officer Border engaged in protected activity by reporting to Manager Dumire and Supervisor Rauschert public safety risks created by Supervisor Rauschert's improper attempt to transfer a gang-affiliated offender to Washington County and the significant understaffing of the Gang Unit of the Parole and Probation Department.

64.    Officer Border reasonably believed that the reports concerned substantial and specific dangers to public safety.

65.    As set forth above, Officer Border suffered unlawful retaliation for those protected reports.

66.    As set forth above, the unlawful retaliation caused Officer Border to suffer embarrassment, humiliation, emotional distress, and other noneconomic damages that are valued at an amount to be specifically proven at trial but currently estimated not to exceed $300,000.

67.    As set forth above, Officer Border also has suffered economic damages in the form of commuting, job search, rent, and costs related to the forced sale of his home that are valued at an amount to be specifically proven at trial but are currently estimated not to exceed $9,200.

68.    Officer Border is entitled to recover his attorney fees - ORS 659A.885.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

## THIRD CLAIM FOR RELIEF
(Common Law Negligence)
(Against Defendant GTO Management, Inc.)

69.     Plaintiff Kenneth Border realleges each and every allegation set forth above and incorporates them herein by reference.  In addition, Officer Border alleges the following facts.

70.     Defendant GTO Management, Inc. was an independent contractor hired by Lane County to investigate a potential policy violation by Officer Border. As a licensed investigator, Mr. Olson owed a duty to Officer Border as the subject of his investigation to conduct a fair and reasonable investigation.

71.     As set forth above, Mr. Olson violated the professional standard of care of a licensed investigator and/or the ordinary duty of care to refrain from creating unreasonable risks of harm in the following particulars:

      a.   Failing to timely initiate and conduct his investigation;

      b.   Failing to provide Officer Border with appropriate and timely notice that the focus of his investigation had shifted from the weapon incident to a much more serious charge of dishonesty;

      c.   Failing to interview exculpatory witnesses; and

      d.   Failing to remain independent and objective.

72.     As set forth above, Officer Border has suffered economic damages in the form of commuting, job search, rent, and costs related to the forced sale of his home as a result of Mr. Olson's negligence that are valued at an amount to be specifically proven at trial but currently estimated not to exceed $9,200.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201

73.    As set forth above, Officer Border has also suffered noneconomic damages as a direct result of Defendant's negligence in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ken Border prays for relief as follows:

1. Judgment in his favor on all claims for relief for $309,200;

2. For an injunction ordering Lane County to provide Officer Border with a name-clearing and to remove the January 7, 2016, letter from Officer Border's personnel file;

3. For plaintiff's attorneys fees;

4. For plaintiff's costs and disbursements incurred herein; and

5. For any other relief that the court deems just, equitable, and/or appropriate.

DATED this 10th day of March, 2017.

HAGLUND KELLEY LLP

By: s/*Christopher Lundberg*
Christopher Lundberg, OSB No. 941084
Matthew E. Malmsheimer, OSB No. 033847
Attorneys for Plaintiff

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201